*E. C. Peters* for the motion.

*J. W. Cathcart* and *R. A. Vitousek* contra.

---

ALFRED SILVA *v.* KAIWIKI MILLING COMPANY, LIMITED, AND HOME INSURANCE COMPANY OF HAWAII, LIMITED.

No. 1077.

EXCEPTIONS FROM CIRCUIT COURT, FOURTH CIRCUIT. HON. C. K. QUINN, JUDGE.

ARGUED APRIL 25, 1918.                    DECIDED MAY 14, 1918.

COKE, C. J., QUARLES AND KEMP, JJ.

WORKMEN'S COMPENSATION ACT—*construction.*

The words "out of" and "in the course of," as used in the Workmen's Compensation Act, providing that if a workman receives personal injuries by accident arising out of and in the course of his employment he shall be compensated, are not synonymous terms. An injury may be received in the course of the em-

ployment and still have no causal connection with it so that it can be said to arise out of the employment.

SAME—*same.*

> S, the manager of a sugar mill, was accidentally injured while participating in a celebration which took place at the final completion of the construction of the mill it being his duty to assist in conducting the celebration. Held that the injury sustained by S arose both out of and in the course of his employment.

SAME—*same*

> Compensation acts being highly remedial in character, though in derogation of the common law, should generally be liberally and broadly construed to effectuate their beneficent purposes.

OPINION OF THE COURT BY COKE, C. J.

The complainant, appellee, Alfred Silva, on July 16, 1916, was, and for some time prior thereto had been employed as, the manager of the Kaiwiki Milling Company, Limited, a domestic corporation. This company had erected a mill at or near Hilo, Hawaii, for the purpose of manufacturing sugar from cane to be grown by the homesteaders and independent land-holders in the vicinity of the mill. The mill had just been completed, and on the date mentioned, which fell on a Sunday, the mill machinery was to be started up for the first time and it was decided by the manager, after consultation with several of the directors of the company, who approved of the plan, that this occasion, which was of great interest to the company as well as to the community, should be duly celebrated. The complainant had charge of the celebration and it was participated in by some of the directors, stockholders, employees of varied nationality, and others. Mr. Cabrinha, one of the directors, had a prominent part in the celebration, and a portion of the expenses of the ceremonies was borne by the company. Some of the Japanese employees, after securing permission from the manager, had constructed a scaffolding about fifty feet in

height over a portion of the mill from which rice cakes containing small pieces of money were to be thrown among the spectators on the ground below. This was in keeping with a Japanese custom which it was supposed portended good luck to the company and the new enterprise about to be launched. On the day mentioned the mill machinery was started in operation, a bottle of champagne was broken over the rollers, speeches were made and a general feast was indulged in. The complainant was importuned by some of the Japanese employees to accompany them upon the scaffolding and to take part in the throwing of the rice cakes. Acceding to the request he ascended the scaffolding which collapsed, and the complainant, together with others, was precipitated to the ground below. The complainant's back was broken, causing total disability. The complainant presented notice of his injury and claim for compensation under the Workmen's Compensation Act to the industrial accident board of the County of Hawaii against the Kaiwiki Milling Company, stating in the notice the nature and cause of the injuries. An arbitration committee constituted in accordance with the provisions of the act found in favor of the complainant. Thereupon the mill company took the matter for review to the industrial accident board, which also found in favor of the complainant. The record below shows that at this stage of the proceedings the respondent, the Home Insurance Company of Hawaii, Limited, made itself a party to the proceedings, designating itself as the "insurance carrier," and it, together with the Kaiwiki Milling Company, gave notice of appeal from the findings and award of the industrial accident board to the circuit court of the fourth judicial circuit. A hearing was thereafter had before said circuit court without a jury. Both of the respondents appeared and vigorously contested the claim of the complainant. The decision and judgment of the circuit court

was for the complainant and the respondents now come before this court on exceptions.

Numerous exceptions are specified in respondents' bill of exceptions, only three of which now appear to be relied upon, to wit: (1) The injury for which the judgment was given did not arise out of and in the course of the employment of the complainant. (2) No evidence was offered showing the liability of the Home Insurance Company of Hawaii, Limited. (3) The complainant at the time of his injury was receiving from the employer an amount greater than $36 per week and so was not an employee within the terms of the Workmen's Compensation Act.

Little need be said in this opinion respecting the last two exceptions specified. The first exception, however, calls for a construction of section 1 of Act 221, S. L. 1915, and known as the Workmen's Compensation Act. The section reads as follows:

"Section 1. This Act shall apply to any and all industrial employment, as hereinafter defined. If a workman receives personal injury by accident arising out of and in the course of his employment, his employer or the insurance carrier shall pay compensation in the amounts and to the person or persons hereinafter specified."

It is vigorously contended by counsel for the respondents that the injuries sustained by complainant did not arise out of and in the course of his employment. Counsel's main contention seems to be that while the accident may have arisen in the course of complainant's employment it did not arise out of such employment. The attempts of courts to formulate general rules relative to the distinction between the terms "out of" and "in the course of" have met with little success. All agree, however, that the terms are not intended to be synonymous. An injury may be received in the course of the employment and still have no causal connection with it so that it can be said to arise

out of the employment.   But it is difficult to conceive of
an injury arising "out of" and not "in the course of" the
employment.   The importance of distinguishing between
these terms arises from the fact that each represents an
element essential to, but not authorizing, the recovery of
compensation without the presence of the element repre-
sented by the other.   In other words, even though the
injury occurred "in the course of" the employment, if it
did not arise "out of" the employment there can be no
recovery, and even though it arose "out of" the employ-
ment, if it did not occur "in the course of" the employ-
ment there can be no recovery.   The words "out of" point
to the origin and cause of the accident or injury, the words
"in the course of" to the time and place and circumstances
under which the accident or injury takes place.

. The words "out of" involve the idea that the accident is
in some manner due to the employment.   It is conceded
by complainant that there must be a causal connection be-
tween the conditions under which the employee worked
and the resulting injury.   While the appearance need not
have been foreseen or anticipated it must appear after
the event to have its origin in a risk connected with the
employment and to have flowed from that source as a
rational consequence.   The statutory requirement should
not be narrowly construed, however.   An employee must
reasonably be allowed some latitude for the exercise of his
own judgment as to when and how he can best serve the
interests of his employer.

It is a matter of common knowledge throughout this
Territory that the managers of sugar mills and of sugar
plantations have no specific hours or days of labor; their
duties are continuous as regards time.   The manager of a
sugar mill may be called upon for the performance of
some duty at any hour of any day or night.   This con-
dition obtaining it is plain to be seen that the complain-

ant was in the course of his employment, that is to say, was within the time thereof, when the accident occurred which resulted in his injury. And while the manager's duties are continuous as regards the course of time of his employment it is likewise true that his duties cover a wide range and are multifarious in character. He is required to perform many services which are only remotely connected with the actual manufacture of sugar—the primary object of the plant.

The undisputed evidence in this case is that the celebration that was being conducted on the day in question was for the benefit of the mill company "to show that the mill was completed and to aid in selling the company's stock." This celebration was not only sanctioned, but participated in, by a number of the directors of the company and part of the expenses of the celebration was defrayed out of the funds of the company. It being the duty of the manager to assist in the celebration it follows as a matter of law that the injury he sustained arose "out of" his employment.

Counsel for the respondents insistently urges that the throwing of the rice cakes, for which the scaffolding was erected, was distinctively a Japanese affair separate and apart from the celebration with which the manager was concerned. The evidence does not sustain this contention. Various forms of amusement were indulged in, all a part of one general event. The Japanese laborers participated, and, as expressed in the evidence, it was a Japanese as well as a Portuguese celebration, and all for the benefit of the company.

Workmen's compensation laws are of recent origin but have met with spontaneous approval throughout the country. The Federal Government, a large majority of the States, Alaska, the Canal Zone and this Territory now have measures for the relief of injured workmen, all bear-

ing a close resemblance. The administration of these laws necessitates an appreciation of the legislative purpose to abolish the common law system relating to injuries to employees as inadequate to meet modern conditions and substitute therefor a system based on a high conception of man's obligation to his fellow-man, a system recognizing every personal loss to an employee, which is not self-inflicted, as an element of the cost of production to be charged to the industry rather than to the individual employer, and liquidated in the steps ending with consumption so that the burden is finally borne by the community in general. The authority for this legislation is that power of the State termed the police power; a power by which the legislature supervises matters relating to the common weal and enforces the observance by each member of the State of duties owed by him to others and to the community at large. All rights are possessed and enjoyed subject to it. Under it the State may prescribe regulations for the promotion of health, peace, morals, education and good order and so legislate as to increase the industries of the State. Reduced to its last analysis the police power is a power of government. It is inherent in every sovereignty. Compensation acts being highly remedial in character, though in derogation of the common law, should generally be liberally and broadly construed to effectuate their beneficent purposes. *In re Ichijiro Ikoma*, 23 Haw. 291, 295; *Kennerson* v. *Thames Towboat Co.*, 94 Atl. 372; *Coakley's Case*, 216 Mass. 71; *The State ex rel. Northfield* v. *District Court*, 131 Minn. 352. Numerous decisions of recent date have been handed down, many of which bear upon the question now under consideration.

Where a servant undertakes in the course of his employment, during the proper hours therefor and in the proper place, to do something in the furtherance of his master's business and meets with accidental injury therein the trial

court's findings that the accident arose out of and in the course of the employment should not be disturbed unless it is clear that the ordinary servant, in the same situation, would have no reasonable justification for believing that what he undertook to do when injured was within the scope of his implied duties. *State ex rel. Duluth Brewing & Malting Co.* v. *District Court,* 151 N. W. 912, 914. See also *Elk Grove Union High School District* v. *Industrial Accident Commission,* 168 Pac. 392. An accident arises "in the course of the employment if it occurs while the employee is doing what a man so employed may reasonably do in the time during which he is reasonably employed and at a place where he may reasonably be during that time and it arises 'out of' the employment when it is something the risk of which may have been contemplated by a reasonable person, when entering the employment, as incidental thereto." *Bryant* v. *Fissell,* 86 Atl. 458; *Martucci* v. *Hills Bros. Co.,* 156 N. Y. S. 833, 834.

We are of the opinion that the injury received by the complainant and for which judgment was given arose both out of and in the course of his employment.

The contention made by the respondents to the effect that at the time of the injury complainant was receiving from the employer an amount greater than $36 per week and that he was for this reason precluded from recovery herein is entirely groundless. The evidence clearly shows that at the time of the injury the defendant herein was receiving the sum of $75 per month and no more, and this status we hold was not changed by reason of the fact that in February 1917 the directors of the company voted to issue to complainant one hundred shares of the capital stock of the company in recognition of his services, money and credit in promoting the company.

The other remaining exception appearing in the record is that "No evidence was offered showing the liability of

the Home Insurance Company of Hawaii." In the notice of injury and claim for compensation filed with the industrial accident board by complainant the insurance company was not made a party thereto but the insurance company thereafter voluntarily appeared and made itself a party to the proceedings and filed a notice of appeal from the findings and award of the industrial accident board, designating itself in the notice as the "insurance carrier" and thereafter continued to appear and defend through the various proceedings including the proceedings before this court. The definition of "insurance carrier" contained in the Workmen's Compensation Act is as follows: " 'Insurance carrier' shall include stock corporations or mutual associations from any of which employers have obtained workmen's compensation insurance or guaranty insurance in accordance with the provisions of this act." S. L. 1915, p. 348. The voluntary appearance of the insurance company, its designation of itself as the "insurance carrier" and the absence of any denial by it at any time of liability branded it as a corporation or association from which the employer had obtained workmen's compensation insurance or guaranty insurance in accordance with the provisions of the act and the complainant was not required to offer proof of that fact, the status of the insurance company being fixed by the section of the act above quoted. In the early stages of the proceedings the insurance company voluntarily made itself a party thereto actively and continuously contesting complainant's claim and its belated attempt to now escape responsibility can find no tolerance here.

The exceptions are overruled.

*W. H. Smith* for complainant.

*C. S. Carlsmith* (*Carlsmith & Rolph* on the brief) for respondents.