JESSE EDWIN WHITLOW, VIONA HANSEN WHIT-
LOW AND LEAH LOUISE WHITLOW *v.* GEORGE
JENNINGS, MAY K. JENNINGS, FRANCIS T.
KANESHIRO, HARUKO KANESHIRO, TARO
KANESHIRO AND MATSU KANESHIRO.

NO. 2934.

ARGUED FEBRUARY 4, 1954.                    DECIDED JUNE 18, 1954.

TOWSE, C. J., LE BARON AND STAINBACK, JJ.

This is an interlocutory appeal from a judgment entered on demurrer and from the refusal of the circuit judge to permit the filing of an amended petition.

The allegations in the petition are in substance as follows:

On or about the 5th day of December, 1950, the appellees George Jennings and May K. Jennings were the owners of certain premises in Honolulu, known as the Na Pua Hotel, containing an area of 104,666 square feet;

The appellants negotiated with the appellees Jennings to purchase a portion of the said premises, containing an area of 33,376 square feet; appellees, the owners thereof, offered to subdivide the said premises into lots, obtain the approval of the city planning commission of the City and County of Honolulu and to sell lot C in a proposed subdivision to petitioners-appellants, whereupon appellants paid appellees Jennings the sum of $500, and subsequently an additional sum of $9500, in consideration of which appellees Jennings agreed to subdivide and enter into and execute an agreement in writing to sell, and appellants to purchase, lot C upon condition that the said appellees Jennings would, in conformity with the statutory requirements, obtain approval of the proposed subdivision by the city planning commission of the City and County of Honolulu; it was further agreed that the agreement to sell was to be placed in escrow with J. Edward Collins, attorney for appellees Jennings, and that the agreement to sell was to be wholly ineffectual and would not be delivered until approval by the city planning commission of the proposed subdivision, at which time — and not before — the escrow agreement was to be delivered by the escrow holder to appellants and thereupon take effect;

This agreement to sell was executed and placed in the hands of appellees Jennings' attorney, J. Edward Collins, and the attorney now holds said contract and is

prepared to deliver the same upon final approval of the said subdivision by the city planning commission;

In conformity with their contract to seek to obtain the approval of the proposed subdivision so that the agreement to sell lot C could become effective, appellees Jennings did file with the city planning commission a petition for the subdivision of the said premises into lots;

On July 24, 1951, the appellees Jennings received from the planning commission of the City and County of Honolulu tentative approval of said subdivision, the said tentative approval of the city planning commission requiring a guarantee to move certain buildings on the premises further from the boundary lines to comply with the building-code ordinance;

Appellants, at the request of the said Jennings, and with the approval of the city planning commission, issued a certified check in the sum of $4,000 as a performance bond to guarantee the moving of said buildings;

Thereafter, on August 17, 1951, appellees Jennings notified appellants that they would no longer proceed with their petition to secure final approval of the proposed subdivision, and on April 15, 1952, appellees Jennings, in repudiation of their contract with appellants, entered into an agreement of sale with appellees Kaneshiros for the sale of a lot, containing an area of 83,130 square feet, which lot included the original proposed lot C, at a higher price than called for in the agreement with appellants;

That although appellants were entitled to the possession of said lot C as soon as the subdivision was approved under the terms of their agreement with appellees, appellees Jennings immediately placed the Kaneshiros in possession and appellees Kaneshiros are at present receiving all the rents and profits of the said premises and using the furniture, fixtures and equipment thereon, which was covered by the said agreement in escrow;

That the city planning commission, with full knowledge of all the transactions, advised appellants and appellees Jennings that it is prepared to grant final approval of the proposed subdivision; that all of the steps for the transfer of the said land from appellees Jennings to appellants were done openly, with the knowledge and approval of the city planning commission, including the execution and placing in escrow of the said agreement of sale; that the appellees Kaneshiros entered into their contract with appellees Jennings with full knowledge of the prior contract which appellees Jennings had entered into with appellants, and that a lis pendens was filed in connection with the appellants' petition prior to said contract between appellees Kaneshiros and appellees Jennings;

That after collecting the said $10,000 from appellants, and after placing the contract in escrow as aforesaid, appellees Jennings changed attorneys and the said J. Edward Collins is no longer acting as attorney for appellees Jennings.

Appellees demurred to the petition of appellants on three counts: (1) the bill does not set forth facts sufficient to constitute a cause of action; (2) the contract is barred by the statute of frauds; and (3) the agreement alleged in the bill is in violation of law and is invalid.

The trial court in its decision found that the defense of the statute of frauds was not valid but sustained the demurrer on the ground that the agreement was in violation of section 6642, Revised Laws of Hawaii 1945, as amended by Act 222, series B-204, Session Laws of Hawaii 1949, and by Act 37, series B-29, Special Session Laws of Hawaii 1949, page 51, relating to subdivisions.

This section provides: "No owner or agent of the owner of any land located within a subdivision in the city and county shall agree to sell, sell, or transfer such land or any portion thereof or any interest therein until a final survey

map thereof in full compliance with the provisions of this act and the regulations adopted under the authority conferred herein, has been approved by and filed with the commission." (R. L. H. 1945, § 6642, as amended by Act 222, ser. B-204, S. L. 1949, and by Act 37, ser. B-29, S. S. L. 1945, p. 51.)

Section 6642.02, Revised Laws of Hawaii 1945, as amended by Act 222, series B-204, Session Laws 1949, page 442, provides penalties by fine of not more than $1000 or imprisonment of not more than one year, or both, and: "In addition, the City and County Attorney may institute an action to prevent, restrain, correct or abate any violation of this Act, or of the regulations adopted under this Act, and the court shall adjudge to the plaintiff such relief, by way of injunction (which shall be mandatory) or otherwise, as may be proper under all of the facts and circumstances of the case, in order fully to effectuate the purposes of this Act and of regulations adopted pursuant thereto."

The selling and buying of land by an owner and a purchaser are common-law rights; selling land is not *malum per se*, whether sold by lot numbers, metes and bounds, or other appropriate description. Consequently, the statute being in derogation of a common-law right must be strictly construed in its prohibitive applications with due regard being given to the purposes of the Act. (50 Am. Jur., Stats., § 400, p. 424; *Akai* v. *Lewis*, 37 Haw. 374.)

"We need not cite authority for the proposition that ordinance number 865 is in derogation of the common law and that such an ordinance will be strictly construed." (*Akai* v. *Lewis*, 37 Haw. 374, 379.)

In the statute and ordinances relating to subdivision there are numerous and various specific restrictions relative to the recording of maps, permits for the installation of utilities, etc., all having in view police and health pur-

poses. Restrictions upon the sale of unapproved subdivisions are twofold: (1) for the protection of the public, and (2) for the protection of purchasers of subdivisions.

The report of the committee on county and municipal affairs of the legislature on Act 237, series B-204, Special Session Laws of Hawaii, 1949, page 51 (House Bill No. 1026), House Journal 1949, page 1659, which amended in a number of particulars the existing laws, states: "Other amendments proposed in the bill, would modernize and perfect existing provisions within the subject matter that experience has proved to be in the interests of the public and particularly for the protection of purchasers of subdivided land."

The purpose of the Hawaiian statutes (and City and County ordinances) relating to subdivisions "* * * is to prevent the subdividing of large areas into smaller areas for the purpose of sale, lease or rent, without providing for 'adequate light, air, fire protection, traffic safety and to insure the proper sanitation and drainage of lands * * *.' (Ord. 865, § 2.)" (*Akai* v. *Lewis,* 37 Haw. 374, 379.)

The public is protected by requiring adequate light, air, fire protection, traffic safety, proper drainage and sanitation, in a proposed subdivision before the planning commission of the City and County grants its approval. The provision against the owner selling such land without approval is to protect an unwary purchaser who may find he has bought a parcel of land upon which he cannot build, cannot install public utilities, etc., because the lot does not comply with the building ordinances or other health or police measures.

In the interpretation of statutes the cause that induced the legislature to enact the statute and the reason and the spirit of the law must be considered. (R. L. H. 1945, § 12.)

A statute should be given such a construction that when practically applied it will tend to suppress the evil

which the legislature intended to prohibit and, further, a statute should not be extended by construction beyond the correction of the evils sought by it. (50 Am. Jur., Stats., § 306, p. 293.)

The rules of statutory construction are fully discussed in the recent case of *Chang* v. *Meagher et als.*, 40 Haw. 96. That case pointed out the accepted rule and the long line of authorities that a thing which is within the intention of the statute is as much within the statute as if it were within the letter, and a thing which is within the letter of the statute is not within the statute unless it be within the intention of the makers.

One of the earliest and most far sweeping decisions in this line is that of the *Holy Trinity Church* v. *United States,* 143 U. S. 457. This case went to an extreme in holding that "a thing may be within the letter of the statute and yet not within the statute, because not within its spirit, nor within the intention of its makers. * * * This is not the substitution of the will of the judge for that of the legislator * * *."

As pointed out in the *Chang* case, *supra,* while the *Holy Trinity Church* case goes to an extreme in departing from literal construction, in general it promulgates no new rule for statutory interpretation.

In another early United States Supreme Court decision, *Lau Ow Bew* v. *United States,* 144 U. S. 47, at page 59, it is said: "Nothing is better settled than that statutes should receive a sensible construction, such as will effectuate the legislative intention and, if possible, so as to avoid an unjust or an absurd conclusion."

The placing in escrow of a contract of sale for certain lots in a proposed subdivision after and upon express condition the subdivision has been duly approved might, under the wording of the statute and under certain circumstances, be considered "an agreement to sell" but it

is difficult to see this as a violation of the statute unless we entirely disregard the aim and purposes of the statute and disregard the rule that under an escrow agreement there is no agreement to sell until compliance with the conditions and delivery of the escrow agreement.

As stated in 66 Corpus Juris, Vendor and Purchaser, section 87, page 546: "As a rule a written contract for the sale of realty is ineffective unless it is delivered. * * * and *a delivery in escrow is without legal effect until the conditions under which it was so delivered have been complied with. * * *"* (Emphasis added.)

Again, in 30 Corpus Juris Secundum, Escrows, section 10, page 1208, it is stated: "Where an instrument is deposited as an escrow, it cannot become operative until the conditions on which it is deposited have been performed or the contingency agreed on has happened * * *."

"Delivery as an escrow· is defined as a delivery on some collateral condition which must be consistent with the contract *on the happening of which condition alone the contract is to take effect.*" (19 Am. Jur., Escrow, § 2, pp. 418, 419.) (Emphasis added.) (See also: *Sheldon* v. *Stagg,* 169 S. W. [2d] 550; *Powers* v. *Rude,* 79 Pac. 89.)

An annotation in 48 American Law Reports 405 points out that where an instrument placed in escrow is delivered by the escrow holder in violation of or without compliance with the terms or conditions of the escrow agreement, no title or rights pass by virtue of the second delivery for the reason that in legal contemplation there has been no effectual delivery.

As stated *supra,* the purposes of the statute relating to subdivisions are (1) the protection of the public by insuring adequate light, air,· fire protection, etc., in the proposed subdivision, and (2) the protection of innocent purchasers from buying lots upon which they could not

build because of the provisions of the various health and sanitary statutes and regulations.

The trial judge stated: "The device of placing the agreement to sell in escrow was merely a stratagem devised in an apparent effort to avoid the provisions of the statute, and wholly fails to relieve the contract from the taint of invalidity."

Obviously, no violation of the law was contemplated, but the contrary; the law could not be violated under the arrangement between appellants and appellees, as the approval of the city planning commission is a condition without which there is no force or efficacy in the escrow agreement. To hold that the escrow contract which provides that the seller must comply with the statute before it has any efficacy is in itself a violation of the statute would serve no useful purpose, but would seem to be slavishly construing words to embrace every possible meaning and would result in an absurdity.

The prohibition against agreeing to sell, as well as selling, etc., is necessary to prevent the ordinary purchase and sale agreement whereby no title is transferred until final payment but where a vendee is usually in possession and for all practical purposes the owner of the property. This does not prevent *bona fide* escrow or optional agreements made subject to approval of the subdivision by the planning commission before the same has any efficacy.

·The several California cases cited by appellees do not involve escrow agreements but merely hold that the vendee may recover money that has been received by a vendor under a void contract. The last case cited, *Shortell* v. *Evans-Ferguson Corp.*, 277 Pac. 519, also held there was a lack of mutuality where one party (the vendor) reserves the right of cancellation. The case of *Young* v. *Laguna Land & Water Co.*, 199 Pac. 810, held that the vendor might cancel a contract and return the money where the

contract was signed under a mistake that the plan had been recorded.

Counsel for appellees argues that the statute of frauds is a bar to this action, evidently referring to the escrow agreement, as the agreement of sale placed in escrow was alleged to be a written instrument and was attached to appellants' amended petition as Exhibit B.

It is generally held that the conditions on which an instrument is deposited on escrow need not be in writing but may rest in parol or partly in parol and partly in writing. "The condition upon which an instrument is delivered in escrow need not be expressed in writing, but may rest in parol or be in part written and in part oral. The rule that a contract or instrument made in writing inter partes must be deemed to contain the entire writing or understanding has no application in the case of escrows." (19 Am. Jur., Escrow, § 6, p. 422.) (See also: 19 Am. Jur., Escrow, § 35, p. 454; 30 C. J. S., Escrows, § 4-c, p. 1196; *Manning* v. *Foster*, 96 Pac. 233.)

Moreover, even though the parol rule were applicable, the allegations of the petition show that there has been sufficient part performance on the part of the appellants to remove it from the bar of the statute of frauds (*Yee Hop* v. *Young Sak Cho*, 25 Haw. 494, and *Vierra* v. *Shipman*, 26 Haw. 369) and the trial judge so found.

Nor is evidence of the escrow agreement prohibited by the parol-evidence rule. (Wigmore, *Evidence*, 3d ed., vol. 9, § 2400, *et seq.*)

In conclusion, admitting that an agreement to sell in violation of the statute is void, the present escrow agreement does not come within the purpose of the statute because (1) the public is fully protected as the contract is of no force and effect until the subdivision is approved by the planning commission; (2) the purchaser is protected for the same reason; and (3) the seller would be

protected in that the placing of the agreement in escrow is an assurance that the contract to subdivide, when performed, would not be in vain and the various expenses (among others, the moving of certain buildings) would not be lost to the vendor. Nor, under a strict construction of the statute, is the agreement to sell within the letter of the statute as such an agreement is of no validity until the condition has been performed.

The ruling of the trial judge is reversed and the case is remanded for further proceedings not inconsistent with this opinion.

*J. V. Esposito* (*Esposito & Esposito* on the brief for appellees Jennings; *Takayesu & Takabuki* also on the brief for appellees Kaneshiros.)

*S. Shapiro* (*Tsukiyama & Yamaguchi* with him on the briefs) for appellants Whitlows.