SHAWN ANTHONY FONSECA and MICHELLE LEILANI FONSECA, et al., Plaintiffs-Appellants, *v.* PACIFIC CONSTRUCTION CO., LTD., et al., Defendants and Third-Party Plaintiffs-Appellees, *v.* SPERRY CONSTRUCTION CO., INC., a corporation, Third-Party Defendant-Appellee.

No. 5317

August 8, 1973

Richardson, C.J., Marumoto, Abe, Levinson, JJ., and Circuit Judge Menor in Place of Kobayashi, J., Disqualified

OPINION OF THE COURT BY LEVINSON, J.

This case involves a dispute over the immunity of third parties to common law tort actions under our workmen's compensation scheme.

The facts are simple: The plaintiffs-appellants are the dependents, widow, parents and estate of John Fonseca, Jr. Fonseca was an employee of Sperry Construction Co., Inc., a subcontractor of either or both Pacific Construction Co., Ltd., and The Hawaii Corporation, hereafter referred to as the general contractors or Pacific-Hawaii. The complaint alleged that Fonseca died on February 17, 1970 in the course and scope of his employment, and that his death was the result of the negligence of the general contractors which were named as defendants and which, together with Sperry, the third party defendant, are appellees. The general contractors moved under H.R.C.P., 12 (b) (6) to dismiss on the ground that they were immune under various provisions of our workmen's compensation statute, HRS Chapter 386. Prior to the hearing on the motion, the parties stipulated that Pacific-Hawaii had never listed Fonseca as an employee or paid workmen's compensation premiums for his benefit; that no workmen's compensation claim was ever made against Pacific-Hawaii; and that Sperry's insurance carrier was paying workmen's compensation benefits to the widow and children of John Fonseca, Jr. After a hearing, the judge below ordered the complaint dismissed. We reverse.

The issue before us on appeal is whether our workmen's compensation system removes all common law rights of action on the part of a worker who has received a compensable injury against a third person other than his direct employer whose misconduct has caused such injury. More specifically, in the present case, the question is whether claims under the survival and wrongful death statutes are barred under HRS Ch. 386.

The most pertinent statutory language, part of HRS § 386-1, reads as follows:

Whenever an independent contractor undertakes to perform work for another person pursuant to contract, express or implied, oral or written, the independent contractor shall be deemed the employer of all employees performing work in the execution of the contract, including employees of his subcontractors and their subcontractors. However, the liability of the direct employer of an employee who suffers a work injury shall be primary and that of the others secondary in their order. An employer secondarily liable who satisfies a liability under this chapter shall be entitled to indemnity against loss from the employer primarily liable.

Also relevant is § 386-5:

The rights and remedies herein granted to an employee or his dependents on account of a work injury suffered by him shall exclude all other liability of the employer to the employee, his legal representative, spouse, dependents, next of kin, or any one else entitled to recover damages from the employer, at common law or otherwise, on account of the injury.

Pacific-Hawaii takes the position that § 386-1 statutorily defines general contractors (also known as independent contractors in workmen's compensation jargon) as employers for purposes of the workmen's compensation system; that because of § 386-5, the exclusivity section, remedies for work-related injuries are limited to those specified under the system; and that general contractors are therefore immune to common law tort actions by employees of their subcontractors or by the dependents, relatives or estates of such employees brought under the survival and wrongful death statutes.

The appellants, of course, read the statute quite differently. They argue that the second sentence in the above-quoted section of 386-1 is decisive in that it dis-

tinguishes between primary and secondary liability, with the former burden on the direct employer of the injured workman. The appellants urge, as a consequence, that general contractors are to be regarded as statutory employers only when actually required to provide workmen's compensation benefits.

Our determination of the legislature's meaning in making the primary-secondary distinction is obviously essential to the disposition of this case. Unfortunately, neither legislative history nor other supplemental sources offer interpretive aid.[1] We are therefore compelled to analyze this distinction within the context of the workmen's compensation scheme as a whole to determine the intent of the legislature.

The appellants argue that the underlying purpose of providing for the contingent liability of general contractors was to protect the special compensation fund feature of the workmen's compensation system, rather than to enable a general contractor to escape third-party liability for its own negligence. We agree. This special compensa-

---

[1]The House Standing Committee Report No. 889 on Senate Bill No. 853, 1963 House Journal at pp. 821-24, reveals that the House changes in the Senate version were ultimately enacted into law. It is, however, unrevealing as to legislative intent, merely repeating the statutory language itself.

The Report does state that the language of the bill is "based in large measure, though not exclusively, on the recodification . . . recommended by Dr. Stefan A. Riesenfeld, Professor of Law." These recommendations can be found in the "Study of the Workmen's Compensation Law in Hawaii", prepared by the Legislative Reference Bureau (Report No. 1: 1963).

Though urged by the appellants to adopt the view proposed in the Riesenfeld study, we decline to do so for two reasons. As we said in Twentieth Century Furniture v. Labor and Indus. Relations Appeal Bd., 52 Haw. 577, 580, 482 P.2d 151, 153 (1971) with regard to this same problem:

> First, we think that studies made by non-members of the legislature are not the most persuasive evidence of legislative intent. Certainly studies do not have the probative value of committee reports or debates. Professor Riesenfeld was an expert on matters of workmen's compensation, yet we cannot be sure that his ideas on the subject can be equated with the will of the legislature. Certainly, the legislature has the power to pick and choose from the ideas presented to it.

Second, § 386-1 as amended was apparently part of that which was not exclusively based on Riesenfeld's recommendations, since its language differs considerably from the proposed recodification. Compare "Study", supra, p. 121, with the statute as enacted.

tion fund, as provided in HRS § 386-56 and §§ 386-151 through 155 (Supp. 1972), is financed by assessment of insurance carriers and self-insured employers and pays benefits in the event of default by an employer or an employer's insurance carrier. Employees and their dependents are thereby assured of compensation regardless of insurance, so § 386-1 cannot be for their benefit.

We do not agree with the argument of the appellees, which is (1) that the legislative intent in enacting § 386-1 was to immunize general contractors from third-party liability by making them statutory employers of their subcontractors' employees in all situations, and (2) that the section is therefore only tangentially related to the special compensation fund. While the first sentence of the section initially appears to confer blanket immunity on general contractors, further consideration leads us to the conclusion that the primary-secondary distinction contained in the second sentence of the section indicates that the legislature was not concerned with third-party tort liability, but rather with making each general contractor the guarantor of compensation for the employees of its subcontractors. Inserting general contractors between defaulting subcontractors and the special compensation fund effectively prevents unscrupulous subcontractors from using all self-insured employers and carriers to pay their workmen's compensation premiums, because prior to the enactment of § 386-1, the latter two groups were required to replenish the depleted fund. Thus, as we interpret this section, its second sentence, by providing for secondary liability on the part of general contractors, confers the statutory employer status referred to in the first sentence only at those times when this contingent liability becomes actual.

Our view that the legislative intent of § 386-1 was to protect the fund rather than grant third-party immunity is reinforced by the fact that its definition of general contractors as employers provides for none of

the incidents of the employer-employee relationship; this relationship lies at the heart of the theory of workmen's compensation. In *Evanson* v. *University of Hawaii,* 52 Haw. 595, 598, 483 P.2d 187, 190 (1971), we said:

> Workmen's compensation laws were enacted as a humanitarian measure, to create legal liability without relation to fault. *Silva* v. *Kaiwiki Mill Co.,* 24 Haw. 324, 330 (1918). They represent a socially enforced bargain: the employee giving up his right to recover common law damages from the employer in exchange for the certainty of a statutory award for all work-connected injuries. Since liability is made dependent on a nexus to the job, the essential prerequisite for coverage under workmen's compensation acts is the existence of an employer-employee relationship.

Once the employer and employee are deemed to be within the confines of the workmen's compensation system, the exact nature of the work relationship, particularly with regard to control over the work being performed, is unimportant insofar as the payment of benefits is concerned; the system is truly no-fault in this sense, since the employee collects benefits owed to him under any circumstances. The employer-employee relationship does, however, bear heavily upon whether the respective rights and responsibilities which workmen's compensation imposes are to be assumed by participation in the first instance.

On the facts presented by this case, the necessary work relationship for third-party immunity is absent or, put another way, there is no *quid pro quo.* Under the statute as we have construed it, the relationship comes into existence only when a subcontractor fails to provide benefits. The appellees neither listed Fonseca as an employee nor paid insurance premiums for his benefit. Moreover, they apparently kept no records of injuries

received by Fonseca, as HRS § 386-95 requires of all employers.

In short, Fonseca's compensation rights as an employee of a subcontractor in no way depended upon the labeling of the general contractor as his employer. Therefore the appellees, having given nothing, cannot expect complete immunity. The policy considerations involved have been well summarized by Professor Allan H. McCoid in his comprehensive article, *The Third Person in the Compensation Picture: A Study of the Liabilities and Rights of Non-Employers*, 37 Texas L. Rev. 389, 445 (1959):

> Retention of a cause of action in favor of the injured worker against the third party is supported by the following arguments: a basic premise of tort law is to give adequate protection to persons injured through the unreasonable conduct of others, although as has been pointed out before the use of objective standards of conduct has removed much of the "moral" aspect of liability based on fault. The compensation acts were not intended to and never have granted complete protection to injured workers, although they provide more protection than the common law in the form of certainty of compensation and payment of medical and hospital expenses independent of the existence of "fault." The compensation acts refer primarily to the relations between an employer and his employees and should not be treated as destroying or affecting the rights or liabilities of other parties not within this relationship, so long as these rights and liabilities are not inconsistent with the principal objective of protection of the worker. The third person, not having contributed to the protection of the worker through payment of compensation or the provision of insurance coverage, will not share any of the burden of loss which his acts have caused unless some common law liability is permitted.

There is no evidence that the legislature ever intended to make workmen's compensation benefits representative of full monetary recovery in the absence of essential prerequisites for coverage. Likewise, the maxim that statutes abrogating common law rights must be strictly construed continues to be applicable. *Cf., Whitlow v. Jennings,* 40 Haw. 523, 527 (1954). We therefore conclude that, under workmen's compensation statute, third-party general contractors are not immune to common law negligence actions on the part of employees of their subcontractors, absent the incidents of a true employer-employee relationship.

Other jurisdictions with statutory schemes similar to our own, in which the general contractor's liability is contingent upon the subcontractor's failure to pay benefits to its employee, have likewise held that there is no third-party immunity in tort when no actual workmen's compensation liability has been imposed. In his treatise on the subject, Professor Larson states that these jurisdictions have been a "comfortable majority". 2 Larson, *The Law of Workmen's Compensation* § 72.31, at 190.[2] See such leading cases as *Probst* v. *Southern Stevedoring Co.,* 379 F.2d 763 (5th Cir. 1967); *Thomas* v. *Farnsworth*

---

[2] While acknowledging that the majority of jurisdictions have declined to confer immunity on general contractors under such circumstances, Larson is critical of these results and argues that the trend is to the contrary. His view is that statutes purporting to grant third-party immunity to general contractors give them incentive to require subcontractors to insure because of the potential liability for compensation in the absence of insurance. He concludes, of course, that immunity should be conferred in view of this burden.

Larson's position has little, if any, relevance for Hawaii, since the inevitability of compensation benefits to employees, as pointed out above, does not hinge on the secondary liability of general contractors, but rather on the existence of the special compensation fund. The direct connection between the general contractor and the subcontractor's employee simply does not exist, with the statutory purpose directed toward avoiding depletion of the fund instead of immunity. Therefore, the Hawaii Legislature cannot be said to have agreed with Larson's view that the burden of contingent liability justifies the grant of full third-party immunity.

Moreover, the trend of which Larson speaks has recently been directly contradicted by Colon Nunez v. Horn-Linie, 423 F.2d 952 (1st Cir. 1970), discussed elsewhere in this opinion.

Chambers Co., 286 F.2d 270 (10th Cir. 1960) ; *Anderson
v. Sanderson & Porter*, 146 F.2d 58 (8th Cir. 1945) ;
*Clark* v. *Monarch Engineering Co.*, 248 N.Y. 107, 161
N.E. 436 (1928) .

Of particular relevance is the recent decision in *Colon
Nunez* v. *Horn-Linie*, 423 F.2d 952 (1st Cir. 1970) . That
case, involving the workmen's compensation law of
Puerto Rico, was decided on considerations substantially
identical to those presented in the case before us. In hold-
ing that third-party general contractors are not immune
as employers, the court relied upon contingent liability
and the absence of other incidents of an employer-em-
ployee relationship, including the failure of *quid pro quo*
obligations.

While our analysis leads to the conclusion that some
common law liability on the part of negligent third
parties may properly be retained alongside workmen's
compensation liability, it does not follow that every per-
son other than the immediate employer should be subject
to tort actions. Each liability question will always turn
on both statutory language and the nexus between the
third party and the activities of the individual employee.

Reversed.

*Gene Bridges (Shim, Sigal, Ono & Huddy* of counsel)
for Plaintiffs-Appellants.

*James Kawashima (Kobayashi, Koshiba & Watanabe*
of counsel) for Defendants and Third-Party Plaintiffs-
Appellees.

*Anthony Y. K. Kim (Conroy, Hamilton, Gibson,
Nickelsen & Rush)* for Third-Party Defendant-Appellee.

---

### DISSENTING OPINION OF MARUMOTO, J.

I dissent. In issue here is the effect of the provision
of HRS § 386-1, quoted below, on the right of an em-
ployee of a subcontractor, who has suffered work injury

caused by general contractor's negligence, to recover damages for the injury from the general contractor in a tort action.

The provision in question reads as follows:

"Whenever an independent contractor undertakes to perform work for another person pursuant to contract, express or implied, oral or written, the independent contractor shall be deemed the employer of all employees performing work in the execution of the contract, including employees of his subcontractors and their subcontractors. However, the liability of the direct employer of an employee who suffers a work injury shall be primary and that of the others secondary in their order. An employer secondarily liable who satisfies a liability under this chapter shall be entitled to indemnity against loss from the employer primarily liable."

That provision is a part of the definition of "employee" in a comprehensive revision of the workmen's compensation law of this State, embodied in Senate Bill No. 853, Senate Draft 5, of the Second State Legislature, and enacted into law as S.L.H. 1963, c. 116, by that legislature at its regular session of 1963. Senate Bill No. 853, as originally drafted and submitted to the legislature contained the recommendations of Professor Stefan Riesenfeld of the University of California Law School.

The literal meaning of the provision in question is clear. It is as follows:

(1) The provision refers to "an independent contractor" who undertakes to perform work for another person pursuant to contract.

(2) In the context of the provision, the term independent contractor means (a) a contractor who does all of the work himself or by employees directly employed by him; (b) a contractor who

does all, or a portion or portions, of the work through a subcontractor or subcontractors; (c) a subcontractor who does all of the subcontracted work himself or by employees directly employed by him; and (d) a subcontractor who does all, or a portion or portions, of the work through a subcontractor or subcontractors under him.

(3) All employees of a contractor who does all of the work himself or by employees directly employed by him are employees of the contractor.

(4) All employees of a subcontractor, in addition to being such, are deemed employees of the independent contractor under whom the subcontractor has his subcontract and all other independent contractors up the line.

(5) The independent contractor who is the direct employer of an employee who has suffered work injury is primarily liable for the payment of workmen's compensation to the employee, and other independent contractors up the line are secondarily liable for such payment in ascending order.

(6) The independent contractor who satisfies his secondary liability to the injured employee is entitled to indemnity against loss from the employee's direct employer.

Thus, under the clear language of the provision in question, an employee of a subcontractor, in addition to being such, is an employee of the general contractor under whom the subcontractor has his subcontract, although such employee has no contractual relationship with the general contractor as his employee. In the parlance of workmen's compensation law, in that situation, the general contractor and the subcontractor's employee are statutory employer and statutory employee in their relationship with each other.

A relationship of statutory employer and statutory employee, in which persons who have no contractual relationship as employer and employee are nevertheless treated as employer and employee, is a well-established concept in workmen's compensation law.

Under the second sentence of the provision in question, the liability of the direct employer to his injured employee is primary and the liability of a statutory employer to the direct employer's injured employee is secondary. That merely establishes a priority, as between the direct employer and a statutory employer, in discharging the employer's liability to the injured employee. It does not affect the right which the injured employee has against the employer, which is the same against a statutory employer as against the direct employer.

HRS § 386-5 limits the remedy of an employee against his employer for work injury to the relief provided in the workmen's compensation law. A statutory employee, being an employee of a statutory employer under the provision in question, is subject to that limitation in obtaining relief for work injury from the statutory employer.

Consequently, the issue in this case should be decided against the injured employee.

In resolving the issue here, the function of this court is to give effect to the legislative intent in enacting the provision in question. Any view which this court may have regarding the desirability of a particular result as a matter of social policy is immaterial to the decision.

The legislative intent with regard to the provision in question is manifested in the plain and unambiguous language of the provision. If there should be any doubt despite such manifestation of intent, a review of the actions taken by the legislature which resulted in the incorporation of the provision in question in Senate Bill No. 853, Senate Draft 5, and its enactment in S.L.H. 1963, c. 116, should dispel such doubt.

I think that the reasoning in the opinion of the court in this case is an unwarranted exercise in judicial legislation. This court may judicially legislate, but it may do so only interstitially to fill some gap in the statutory language. *Hayes* v. *Gill*, 52 Haw. 251, 254, 473 P.2d 872, 875 (1970). Here, there is no gap to be filled in the statutory language.

The draft of Senate Bill No. 853, as originally presented to the legislature, did not contain the provision in question. The provision in the original draft read as follows:

> "Where by reason of there being an independent contractor, or for any other reason, the owner or lessee of premises, or other person who is virtually the proprietor or operator of the business there carried on is not the direct employer of persons there employed such persons shall nevertheless be deemed his employees within the meaning of this chapter, unless the direct employer has secured compensation to them as provided in section 97-120."[1]

That provision was intended as a substitute for the pre-existing statutory employer provision, which was enacted in S.L.H. 1915, c. 221, § 60, compiled in RLH 1955, § 97-1, and reading:

> " 'Employer', unless otherwise stated, includes any body of persons, corporate or unincorporated, public or private, and the legal representative of a deceased employer. It includes the owner or lessee of premises, or other person who is virtually the proprietor, or

---

[1] Section 97-120 mentioned in the quoted provision is RLH 1955, § 97-120 (1965 Supplement), and is presently compiled in HRS § 386-121. It requires an employer to secure compensation to his employees by: (1) obtaining workmen's compensation insurance; (2) depositing and maintaining with the State director of budget satisfactory security; or (3) furnishing to the director satisfactory proof of solvency and financial ability to pay the compensation. Hereafter, an employer who has secured compensation to his employees will be referred to as insured employer, inasmuch as the prevalent mode of securing compensation to employees is by obtaining workmen's compensation insurance.

operator of the business there carried on, but who, by reason of there being an independent contractor, or for any other reason, is not the direct employer of the workmen there employed. If the employer is insured it includes his insurer as far as applicable."[2]

In ascertaining the intent of the legislature with regard to the present provision from a review of the legislative history relating thereto, it is pertinent that the legislature had before it the recommendation of Professor Riesenfeld that the pre-existing provision "be qualified so as to place either the exclusive or the primary liability on the direct employer, if he has taken out compensation insurance and the wages of the employee figure in the premium base," and his statement regarding the difference in legal consequences between making the direct employer exclusively liable and making him primarily liable.

Professor Riesenfeld's statement regarding the difference in legal consequences which would follow from making the direct employer exclusively liable and making him primarily liable was as follows:

"The difference between placing the 'exclusive' liability on the employer rather than the 'primary' liability lies in the effect of this distinction on the tort liability of the owner and his employees. If it is desired to shield the owner and his other employees from third-party liability, then secondary liability must be left imposed upon the owner. Vice versa, if it is desired to give the victim in cases of negligence an action at law either against the owner or his negligent employees, the direct employer must be exclusively liable."

The word "owner," as used in the foregoing state-

---

[2]Hereafter, the pre-existing statutory employer provision quoted above, the provision in the original draft of Senate Bill No. 853, and the provision of HRS § 386-1 in question here, will be referred to, respectively, as the pre-existing provision, the draft provision, and the present provision.

ment, referred to a person who came within the category mentioned in the pre-existing provision as "the owner or lessee of premises, or other person who is virtually the proprietor, or operator of the business there carried on, but who, by reason of there being an independent contractor, or for any other reason, is not the direct employer of the workmen there employed."[3]

The pre-existing provision simply defined an employer, and included the owner within the definition as an employer, thereby making the owner a statutory employer, but did not establish an order of liability, as primary and secondary, between a direct employer and a statutory employer.

The draft provision differed from the pre-existing provision in that it was a part of the definition of employee, instead of being a definition of employer, and in containing the clause: "unless the direct employer has secured compensation to them as provided in section 97-120."

The placement of the provision as a part of the definition of employee, rather than as a definition of employer, made no significant difference.

However, the quoted clause effected a material change. It imposed exclusive liability upon an insured direct employer. The imposition of exclusive liability upon an insured direct employer had the effect of denying the status of statutory employer to an owner, and rendering HRS § 386-5 inapplicable to him, in his relationship with the employees of such direct employer.

The clause did not affect the status of an owner as a statutory employer of the employees of an uninsured direct employer.

---

[3]Hereafter, the word "owner" will be used to refer to a person within the category described in the above quotation. At the time Professor Riesenfeld made his statement, the question whether a general contractor, who was not an owner or lessee of the work site, was included in that category had not been litigated. The question was subsequently decided in the negative in Lawrence v. Yamauchi, 50 Haw. 293, 439 P.2d 669 (1968).

Thus, under the draft provision, an owner would have been a statutory employer only in his relationship to the employees of an uninsured direct employer.

If the legislature intended to eliminate an owner as a statutory employer of the employees of an insured direct employer, it is reasonable to assume that the legislature would have enacted the draft provision into law. That is so particularly in view of the fact that it had the statement of Professor Riesenfeld that "if it desired to give the victim in cases of negligence an action at law * * * against the owner * * * , the direct employer must be exclusively liable."

The legislature did not enact the draft provision into law. The Senate originally passed Senate Bill No. 853 with the draft provision intact. When the bill was transmitted to the House of Representatives, the House deleted the draft provision and inserted the present provision in its place. Upon the bill being returned to the Senate, the Senate agreed to the change made by the House, and incorporated the present provision in Senate Draft 5 of the bill, which was eventually enacted into law.

The present provision differs from the draft provision, first, in according the status of statutory employer to a person who comes within a category consisting of an independent contractor under whom a direct employer has a subcontract and other independent contractors up the line, without regard to whether the direct employer is insured or uninsured, and, second, in making the liability of the direct employer primary and the liability of a statutory employer secondary.

The conclusion to be drawn from the first difference is that, in enacting the present provision, the legislature intended to accord the status of statutory employer to persons within the category of independent contractors described above, without regard to the insured status of the direct employer, and to deny that status only to owners who are not within the mentioned category of in-

dependent contractors, even in a situation in which the direct employer is uninsured.

With regard to the second difference, there can be no question that the legislature made the change with full awareness of the legal implication of such change, as set forth in Professor Riesenfeld's statement.

The decision of the court in this case is based on the reasoning that the object of the present provision is to protect the special compensation fund mentioned in HRS § 386-56 and §§ 386-151 through 155, and not with granting third-party immunity to independent contractors other than the direct employer. I see nothing in the language of the present provision, its legislative history, or other provisions of the workmen's compensation law to support that reasoning.